JAMES H. GRADY, as Trustee, Appellant, v UTICA MUTUAL INSURANCE COMPANY, Also Known as UTICA FIRE INSURANCE COMPANY OF ONEIDA COUNTY, Respondent, et al., Defendants.

Second Department, August 6, 1979

### APPEARANCES OF COUNSEL

*Munley, Meade, Burns & Nielsen, P. C. (James G. Meade* and *William J. Nielsen* of counsel), for appellant.

*Gwertzman & Pfeffer (Ellen Lefkowitz* of counsel), for respondent.

### OPINION OF THE COURT

DAMIANI, J. P.

In this case, the assignee of a mortgage obtained a judgment of foreclosure upon the default of the mortgagors, but before a foreclosure sale could be held the property was destroyed by fire. The assignee was the named beneficiary of a policy of fire insurance covering the premises and he therefore made a claim to the insurer for payment in the amount of the judgment of foreclosure. The insurer agreed to pay only the amount of the outstanding principal of the mortgage debt plus the interest due thereon as of the date of the fire. On this appeal we are called upon to decide whether the interest of the mortgagee's assignee under the New York standard mortgagee clause should be measured by the judgment of foreclo-

sure or should be limited to the outstanding mortgage debt plus interest. The specific facts of the case are as follows:

On October 18, 1972 the defendants Dominick and Josephine Di Martino executed and delivered a bond and mortgage to one Louis A. Droesch. The bond acknowledged an indebtedness of $26,500 to be amortized over a period of 20 years, bearing interest at the rate of 7½% per annum. The mortgage granted a lien on real property owned by the De Martinos as tenants by the entirety in Richmond Hill, Queens County, as collateral security for payment of the loan.

The bond contained the usual acceleration clause which provided that: "the said principal sum shall at the option of the obligee become due on the happening of any default or event by which, under the terms of the mortgage securing this bond, said principal sum may or shall become due and payable; also, that all of the covenants, conditions and agreements contained in said mortgage are hereby made part of this instrument."

The mortgage provided, *inter alia:*

"4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any instalment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; * * *

"6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof the mortgagee may pay the same. * * *

"12. * * * In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail".

On March 15, 1975 Droesch assigned the bond and mortgage to plaintiff James Grady, as trustee. The assignment was recorded on May 15, 1975.

The defendant Utica Mutual Insurance Company (hereinafter Utica Mutual) issued its homeowner's policy which, among other coverages, insured the dwelling on the premises for $40,000 for the period from October 18, 1975 to October 18, 1978. As initially drawn the named beneficiaries of the policy were the Di Martinos as owners, and Droesch as mortgagee. On October 3, 1975 Utica Mutual issued an indorsement to

the policy changing the name of the insured mortgagee to James H. Grady, as trustee for Louis A. Droesch. The policy provided, *inter alia:* "4. New York Standard Mortgagee Clause: If a mortgagee is named in the Declarations, loss or damage, if any, on buildings under this policy, shall be payable to the aforesaid as mortgagee (or trustee) *as interest may appear,* and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property" (emphasis added).

The Di Martinos made monthly payments totaling $3,842.82 against principal and interest, but upon their default in making the monthly payment due on December 1, 1976, the plaintiff exercised his right under the acceleration clause to declare the unpaid balance due and owing. On January 31, 1977 plaintiff instituted an action to foreclose the mortgage by causing the Di Martinos to be personally served with a summons and verified complaint. The Di Martinos defaulted in appearing and answering and on March 16, 1977 the matter was referred to a referee to compute the amount due to the plaintiff and report. The referee's report, dated April 4, 1977, found that the amount due the plaintiff was $34,036.48, representing outstanding principal and interest, and real estate taxes and assessments paid by the mortgagee to protect his security.[1]

Plaintiff moved for entry of a judgment of foreclosure and sale against the defendants. The clerk taxed costs in the sum of $225 and disbursements in the sum of $207.98. The judgment as entered granted an additional award of $300 costs to plaintiff, apparently under authority of CPLR 8303 (subd [a],

---

1. We have examined the papers in the foreclosure action currently on file in the office of the County Clerk of Queens County bearing Index No. 2067/77 and we take judicial notice of the contents thereof (see Richardson, Evidence [10th ed], §§ 14, 30). The report of the referee contains the following computation of the amount owing:

| | |
|---|---:|
| Principal of bond and mortgage as of March 31, 1977 | $25,537.56 |
| Plus unpaid interest to March 31, 1977 at 7 1/2% | 5,598.00 |
| Advance for back real estate tax and interest | 2,710.47 |
| Current real estate tax (in arrears) | 171.50 |
| Interest through March 31, 1977 | 2.93 |
| Current sewer rent (in arrears) | 15.62 |
| Interest through March 31, 1977 | .40 |
| Total due as of March 31, 1977 | $34,036.48 |

par 1), for a total award of costs and disbursements of $732.98. The judgment directed, *inter alia,* that the property be sold and that from the proceeds of the sale the plaintiff be paid $34,036.48, with interest thereon at the legal rate from December 1, 1976,[2] plus costs and disbursements of $732.98 with legal interest thereon at the legal rate from April 20, 1977, making a total award to plaintiff of $34,769.46 plus interest. The judgment also authorized the referee to deduct his statutory fees for conducting the sale from the proceeds thereof in a sum not to exceed $200.

On May 1, 1977 before the foreclosure sale could be held, the dwelling on the property was damaged by fire. Plaintiff asserts that the building was a total loss, whereas defendant Utica Mutual claims that the loss was $33,600.

After the fire plaintiff demanded that Utica Mutual pay the sum of $34,969.46 awarded in the judgment of foreclosure. By letter dated September 26, 1977, Utica Mutual's attorney responded: "according to our calculations the original amount of the mortgage was $26,500. There were payments on account of $3,842.82 for amortization and interest. The net amount therefore was $22,657.18. My clients are prepared to pay to your client the sum of $22,657.18 with interest from the date of the last payment to the date of the loss, which was May 1st, 1977."

Plaintiff found Utica Mutual's offer unacceptable and on or about September 29, 1977 he instituted this action against Utica Mutual and the Di Martinos to recover the sum of $34,969.46 on the policy. In its answer Utica Mutual asserted that plaintiff's interest under the mortgage was merely the outstanding principal of the mortgage loan plus interest thereon to the date of the fire, which sum it calculated to be $22,657.18.

Plaintiff then moved for summary judgment. Special Term adopted the reasoning of defendant Utica Mutual and held that plaintiff's mortgage interest in the property was the outstanding mortgage debt with interest. Plaintiff has appealed.

 We turn first to an examination of the contract of insurance. By that contract, Utica Mutual agreed, among

2. It appears that this retroactive award of legal interest was erroneous because the referee computed interest at the mortgage rate up to March 31, 1977. Accordingly, interest on the referee's award should have been computed at the legal rate from April 1, 1977.

other coverages, to pay any loss up to a limit of $40,000 occasioned by fire damage to the dwelling on the premises. The policy also contained a provision known as the New York "standard" or "union" mortgagee clause. This clause in effect provided that in the event of fire damage to the dwelling, Utica Mutual was bound to pay the actual value of the loss, not exceeding the policy limit, directly to the named mortgagee to the extent of his interest (see 5 Couch, Insurance 2d, § 29:68). The standard mortgagee clause differs from the so-called "loss-payable" clause in that under the former, the interest of the mortgagee in the proceeds of the policy cannot be invalidated by any act or neglect of the mortgagor or owner of the insured property (38 NY Jur, Mortgages and Deeds of Trust, § 142). In this respect the standard mortgagee clause has been said to create a separate and independent insurance of the mortgagee's interest, free from the conditions imposed upon the mortgagor or owner *(Eddy v London Assur. Corp.,* 143 NY 311, 322; 6A Appleman, Insurance Law and Practice [1972 rev ed], § 4164). However, this does not mean that a policy containing the standard mortgagee clause permits two complete recoveries for the same loss. It merely requires that the insurer first make payment of the loss to the mortgagee to the extent of his interest in the property and then pay the balance of the loss, if any, to the mortgagor, so long as the latter is not in default of any of the conditions of the policy *(Hartwig v American Ins. Co. of City of Newark,* 169 App Div 60, 62-63). An insurance policy containing the standard mortgagee clause "accomplishes an insurance of the property and not of the debt, and the only importance of the debt is that it gives the mortgagee an insurable interest in the property." *(Fields v Western Millers Mut. Fire Ins. Co.,* 290 NY 209, 213.)

Thus, a homeowner's insurance policy containing a New York standard mortgagee clause requires the insurer to make but one payment for any loss, up to the face amount of the policy. The effect of the standard mortgagee clause is simply to require that payment of the loss be first made to the mortgagee up to the extent of his interest and that the balance be remitted to the mortgagor. Where the insurer is not entitled to subrogation under the terms of the policy, payment to the mortgagee works a *pro tanto* reduction of the mortgage lien (see *Kernochan v New York Bowery Fire Ins. Co.,* 17 NY 428). In this sense, the standard mortgagee clause

serves to apportion payment among the parties with an interest in the insured premises. The insurer's liability is fixed at the amount of the damage sustained in the fire up to the limit of the policy. However, where the mortgagor is in default of any of the conditions of the policy, the insurer is not liable to him thereunder and it need only pay the mortgagee up to the extent of the mortgagee's interest. The standard mortgagee clause then provides that the insurer is subrogated to the rights of the mortgagee under the mortgage up to the extent of its payment. The record in this case is unclear as to whether the Di Martinos were in default of any of the conditions of the policy.

With these principles in mind, we now turn to the problem of defining the extent of the interest of the mortgagee in the property. Couch states that the phrase "as interest may appear" has reference to debts (11 Couch, Insurance 2d, § 42:662). Since a mortgage may be defined as a lien on real property given as security for a debt (38 NY Jur, Mortgages and Deeds of Trust, § 1), the defendant Utica Mutual argues that its liability to plaintiff is limited to the amount of the outstanding mortgage debt with interest thereon to the date of the fire. We hold that the phrase in the instant policy insuring the plaintiff mortgagee "as interest may appear" means that defendant Utica Mutual undertook to pay plaintiff "to the extent of his lien or charge upon the premises" as it existed on the date of the fire (*Sias v Roger Williams Ins. Co.,* 8 F 187, 188; *Eagle Star & British Dominions v Tadlock,* 22 F Supp 545, 547, affd *sub nom. Walsh v Tadlock,* 104 F2d 131; cf. *Kernochan v New York Bowery Fire Ins. Co.,* 17 NY 428, 436, *supra).* The lien of the mortgage is comprised of the oustanding principal of the debt with interest due thereon to the date of computation. In addition to this sum, the mortgage lien secures the amount of any moneys paid by the mortgagee to protect his security on account of overdue taxes and assessments which the mortgagor has neglected or refused to pay (*Sidenberg v Ely,* 90 NY 257; 38 NY Jur, Mortgages and Deeds of Trusts, § 146). When the mortgagor is in default and the mortgagee brings an action to foreclose the mortgage, the mortgage lien is also security for the costs and disbursements of the action (*Eaton v Wells,* 82 NY 576, 579; *Clark v Levy,* 130 App Div 389; *Quaremba v Nassau Suffolk Lbr. & Supply Corp.,* 21 Misc 2d 645; *Wood v Kroll,* 43 Hun 328; *Byrnes v Labagh,* 12 NY Civ Pro Rep 417; *Benedict v Warriner,* 14 How

Prac 568; 3 Jones, Mortgages [8th ed], ch 35, part IV, § 2051, part V, § 2055; see, also, 15 Carmody-Wait 2d, NY Prac, § 92:219; Thomas, Law of Mortgages of Real Property in the State of New York [3d ed], § 857; CPLR 8201, 8301, 8302, subd [a], par 1; Real Property Actions and Proceedings Law, § 1351, subd 1; 59 CJS, Mortgages, § 688).

In New York there is a conflict of authority as to whether payments of taxes and assessments by the mortgagee as well as the costs and disbursements awarded in a foreclosure action are actually added to and become an integral part of the mortgage debt *(Sidenberg v Ely,* 90 NY 257, 262, *supra),* or whether they are merely tacked on to the debt as an "incident" thereof *(Eaton v Wells,* 82 NY 576, 579, *supra).* Suffice it to say that under either theory such additional sums are debts owed by the mortgagor to the mortgagee which come within the security of the lien and are collectible by the mortgagee upon foreclosure. Utica Mutual's argument overlooks the fact that the standard mortgagee clause in its policy constituted an indemnity against loss to the mortgagee by fire damage to the property mortgaged (cf. *Excelsior Fire Ins. Co. v Royal Ins. Co. of Liverpool,* 55 NY 343, 355) and that the manifest purpose of the phrase "as interest may appear" was to make certain that in the event of loss the mortgagee would be protected up to the sum for which the property stood as security, namely, the amount of his lien.

A standard mortgagee clause in a contract of fire insurance contemplates the possibility of foreclosure of the mortgage *(National Fire Ins. Co. of Hartford, Conn. v Finerty Inv. Co.,* 170 Okla 44; see, also, 11 Couch, Insurance 2d, § 42:712). Thus, it follows that the defendant Utica Mutual must be charged with knowledge that in the event of foreclosure, the "interest" of the mortgagee would include not only unpaid principal and interest but also any payments made by the mortgagee to protect his security as well as the costs and disbursements of the foreclosure action. The contract of insurance in the instant case clearly contemplates that the mortgagee's interest might eventually exceed the amount of the original loan since another part of the standard mortgagee clause states in relevant part: "Loss or damage, if any, under this policy shall be payable to the aforesaid mortgagee (or trustee) as interest may appear under all present or future mortgages * * * it being understood that no notice of *increase* or decrease in any mortgagee's interest is required" (emphasis added).

In reaching our conclusion that a mortgagee's "interest" in the insured premises equals the amount of his lien and includes not only unpaid principal and interest thereon, but also payments of taxes and assessments made by the mortgagee to protect his security and the costs and disbursements of any foreclosure action, we are aware of the case of *Ben-Morris Co. v Hanover Ins. Co.* (333 NE2d 455 [Mass]) but decline to follow that precedent. The *Ben-Morris* case holds that under Massachusetts law the standard mortgagee clause only insures the mortgagee to the extent of the unpaid mortgage "debt" plus interest to the date of the fire and excludes payments of taxes and an award of costs and disbursements in an earlier action to foreclose the mortgage. Two New York cases bear upon the issue at bar and do not support the conclusion reached by the Massachusetts courts in *Ben-Morris (supra).* The cases of *Whitestone Sav. & Loan Assn. v Allstate Ins. Co.* (28 NY2d 332) and *Moke Realty Corp. v Whitestone Sav. & Loan Assn.* (82 Misc 2d 396, affd 51 AD2d 1005, affd 41 NY2d 954) both involved claims for the proceeds of fire insurance policies in which the mortgagee made a claim for insurance proceeds framed by the amount of its judgment of foreclosure. In the *Whitestone Sav. & Loan Assn. v Allstate Ins. Co.* case, the mortgagee purchased the property at the foreclosure sale for the amount of its judgment. The report of the referee in that case has been submitted as an exhibit on this appeal and it clearly indicates that the judgment included an award for overdue taxes and the plaintiff's disbursements in the foreclosure action. The Court of Appeals stated *(supra,* p 334) that the amount of the judgment was the amount "then due on the mortgage" and since the mortgagee had purchased the property for this sum at the sale, the debt was satisfied and the mortgagee's insurable interest terminated. Accordingly, the insurer was not liable because the mortgage debt and outstanding taxes, cost and disbursements had been satisfied. In *Moke,* the default on the mortgage occurred after the fire loss. The plaintiff then sued to foreclose the mortgage and obtained a judgment of foreclosure which, as here, included an award for taxes, interest, costs and disbursements. The damaged property was sold for less than the amount of the judgment and the mortgagee demanded that the insurer pay the difference between the amount realized at the sale and the amount of its judgment. Special Term held that the mortgagee's "interest" under the standard mortgagee clause was coextensive with the debt it was owed and it dismissed the mortga-

gee's suit against the insurer only because the debt of the former had been conclusively deemed satisfied under section 1371 of the Real Property Actions and Proceedings Law because of its failure to make a timely application to enter a deficiency judgment. To the extent that the obiter dicta in *Moke* can be read as implying that had the mortgage lien not been satisfied by the failure to enter a deficiency judgment the mortgagee would have been entitled to recover the taxes paid plus costs and disbursements of a foreclosure action incurred *after the fire loss,* we question such reading because the amount of the loss payable to the mortgagee became fixed at the time of the fire *(Savarese v Ohio Farmers Ins. Co. of Le Roy, Ohio,* 260 NY 45, 54) and at that time such sums were not part of its lien. However, both the *Whitestone Sav. & Loan Assn.* and *Moke* cases are supportive of our conclusion that in a case where taxes have been paid and costs and disbursements have been incurred prior to the loss, they constitute a part of the mortgagee's lien on the property and form part of his interest therein.

■ ■ Having decided that under the "as interest may appear" provision of the standard mortgagee clause Utica Mutual must pay plaintiff the amount of his mortgage lien on the date of the fire, it becomes necessary to decide what weight to give the judgment of foreclosure as evidence of the amount of plaintiff's lien. The rule in New York is that as between the parties to the mortgage and their assigns, a judgment of foreclosure is conclusive as to the amount of the mortgagee's lien on the premises *(Clark v Levy,* 130 App Div 389, 392, *supra;* see, also, *Dewey v Brownell,* 54 Vt 441; *Burlington Bldg. & Loan Assn. v Cummings,* 112 Vt 122, 125) but it is not conclusive as to persons who are not parties to the proceedings *(Smith v Pacific Improvement Co.,* 104 Misc 481; *Wacht v Erskine,* 61 Misc 96). Since it was not a party to the foreclosure action, Utica Mutual was free to mount a collateral attack upon the amount of the judgment of foreclosure. However it has never contended that the referee's computation of the amount due or the clerk's taxation of costs and disbursements was incorrect. It has simply claimed that as a matter of law the mortgagee's "interest" under the policy does not include moneys advanced by the mortgagee for outstanding taxes or the costs and disbursements of the foreclosure action. Under its interpretation, the mortgagee's "interest" is limited solely to the outstanding principal of the debt with

interest thereon to the date of the fire. We have held this contention to be incorrect, and in the absence of a challenge to the referee's or court's computations, the insurer should be required to pay the amount so computed.

■ Plaintiff has made a claim against defendant under the policy for $34,969.46. Apparently this figure includes the sum of $200 which the court authorized to be deducted from the proceeds under CPLR 8003 (subd [b]) as the maximum fee of the referee for conducting the sale. The sale was never held and thus the fee was not earned, and since this fee was not payable to the plaintiff in any event, it should be excluded from the calculation of the value of plaintiff's unforeclosed mortgage lien. Accordingly, we find the value of that lien to be $34,769.46 with interest.

The final issue presented is the calculation of the amount for which defendant Utica Mutual is liable. The policy only obligates Utica Mutual to pay plaintiff the amount of any loss up to the value of his interest in the premises. The papers raise an issue of fact as to the extent of the loss. Plaintiff claimed that it was total whereas the defendant contended in its papers submitted in opposition to the motion for summary judgment that the dwelling sustained only $33,600 damage. Accordingly, the order appealed from should be reversed and the matter remitted for an immediate trial of the issue of damages under CPLR 3212 (subd [c]). If the damage to the premises exceeded the value of plaintiff's lien, Utica Mutual should be directed to make payment in the amount of the lien together with applicable interest thereon. If, on the other hand the value of plaintiff's lien exceeded the damage, the insurer should be directed to pay plaintiff only the amount of the loss and he may then seek to recover the balance of his lien by foreclosing against the damaged premises.

SUOZZI, LAZER and RABIN, JJ., concur.

Order of the Supreme Court, Nassau County, dated August 9, 1978, reversed insofar as appealed from, on the law, with $50 costs and disbursements, and action remitted to the Supreme Court, Nassau County, for further proceedings in accordance with the opinion herein.